COMMONWEALTH of
Kentucky, Movant,

v.

Stanley Lewis BURNLEY, Respondent.

Supreme Court of Kentucky.

April 10, 1986.

Rehearing Denied June 12, 1986.

David L. Armstrong, Atty. Gen., Frankfort, Mary D. Schoening, Joan L. Byer, Sp. Asst. Attys. Gen., Louisville, for movant.

Daniel T. Goyette, Jefferson Dist. Public Defender, J. David Niehaus, Deputy Appellate Defender of the Jefferson Dist. Public Defender, Rob Eggert, Frank W. Heft, Jr., Louisville, for respondent.

### CERTIFYING THE LAW

We have granted the request of the Commonwealth to certify whether the dismissal of an indictment charging respondent with trafficking in a Schedule II narcotic, cocaine, was erroneous.

At the trial of the respondent, a laboratory analyst testified that he received an envelope from Jefferson County police, that he opened it, removed and tested the contents which he found to be cocaine, placed the remainder back in the envelope, resealed it with a red tape, and returned it to the Jefferson County police.

At the conclusion of his testimony the following colloquy occurred between counsel and the trial judge:

"THE COURT: Ladies and gentlemen of the jury, I will ask you to retire to the jury room; however, you don't have to stay there, but just please do not come back into the courtroom until I call for you.

"The evidence, the Commonwealth has closed its case. I don't need an explanation. I have heard the testimony. The top of this envelope is not opened. Officer Fleets opened this in court today, not the flap, neither of these flaps have been broken and this envelope was opened in court today. This top (indicating to envelope). What is your motion, counsel?

"MR. EGGERT: For a directed verdict of acquittal.

"THE COURT: Sustained.

"MS. BYER: On what grounds?

"THE COURT: This envelope has not been opened except in this court by Officer Fleets in my presence, and which she did when she picked up this envelope. The flap of this envelope here has not been broken.

"MS. BYER: That wasn't the testimony.

"THE COURT: I am looking at the evidence envelope. The evidence envelope has not been opened here.

"MS. BYER: That was not the testimony, Your Honor.

"THE COURT: Counselor, I am putting this into the record. This envelope has not been opened here, nor has it been opened at the other end where Officer Fleets put some Scotch tape and put her initials and the date that is at the very top of it. That flap where she put her initials and date, that top has not been cut, has not been

opened. That flap could not have been opened. This other end where the end where it is stamped 'evidence,' was opened in this courtroom today. The flap has not been opened. The flap where it says evidence has not been opened.

"MS. BYER: Judge, it is my understanding that this evidence envelope was opened right where this line is at the time the evidence was sliced out. That is why the tape is on there.

"THE COURT: This flap is closed at the bottom. It is not cut at the top.

"MS. BYER: Judge, none of the evidence envelopes are opened in any other method other than by where the tape was indicated cut open. It was spliced here with a knife. It was pushed down.

"MR. EGGERT: We can't go beyond the record.

"MS. BYER: Judge, I feel from the beginning of this case this Court has been prejudiced against the Commonwealth.

"THE COURT: This case is dismissed. You put on the record, Ms. Byer, whatever you want to.

"MS. BYER: Judge, you are making a jury determination about a piece of evidence. For the record, if I may please sir, Your Honor, you have been prejudiced against the Commonwealth since the commencement of this case. This has been the evidence in front of this jury and in private away from the jury. You have made a motion on your own.

"THE COURT: Officer, do not touch this document in the courtroom. If you want to make a motion, you ask your attorney to make a motion. At this time, do you want to seal that? We will seal that on a motion of counsel. It is already a part of this record.

"OFFICER BRIAN: Your Honor, according to Kentucky Statute, in the Jefferson County Police Department, we are responsible for this evidence after it has been submitted as evidence in court.

"THE COURT: It has been introduced as an exhibit in this case. Now it will remain as an exhibit in this case until a motion is made to withdraw it as an exhibit.

"OFFICER BRIAN: I am just trying to preserve the integrity of the evidence.

"MS. BYER: At this time, if, in fact, this courtroom is going to unnecessarily discharge the jury, the Commonwealth would ask for any evidence in this case to be released to the Commonwealth and then only to any appropriate persons thereafter at the time that the jury in this case has been released. (Reporter's Note: At this time, the jury was brought back into the courtroom.)

"THE COURT: Ladies and gentlemen of the jury, sometimes physical evidence speaks louder and more powerfully than does oral testimony. I have dismissed this case. I have directed an acquittal for the defendant. The Commonwealth rested its case. The reason I have directed a verdict of acquittal is because the evidence envelope which was introduced as Commonwealth Exhibit 1 speaks for itself, particularly, in conjunction with Officer Fleets' own testimony and Officer Fleets' actions of opening the envelope in this courtroom before you and before me than any other oral testimony. The envelope was sealed by Officer Fleets and she put some Scotch tape across the one end and put her initials and dated it on that end of the envelope, particularly where it is sealed. The one flap sealed has never been opened, nor has the other flap ever been opened. This end was cut open in this courtroom. This end where you see the red has never been cut open. I do not know what substance was tested, but I do not believe that whatever substance was tested was tested out of this envelope. This case is dismissed, and Mr. Burnley, you are free to leave this courtroom.

"Ladies and gentlemen of the jury, your duty in this case is over. Ms. Byer, do you have a motion? I will entertain your motion.

"MS. BYER: At this time, the Commonwealth moves that the exhibit be returned to the Commonwealth due to the fact that this case is closed. However, what I would

like to do before that, Judge, is I would like to explain what we are going to be doing. I am going to move that Mr. Stokes remove the tape that the lab put on the envelope.

"THE COURT: Your motion is sustained. If you want to withdraw this, you may withdraw this.

"MR. STOKES: Obviously, the blame has been placed on me. The inference is that I have not opened that envelope and tested the contents of that envelope without opening it.

"THE COURT: I have no other inference. (Witness continuing:)

"MR. STOKES: I spliced it open underneath this seal. See, underneath the tape where that is opened? I stated I opened it above where Dawn Fleets sealed it. This envelope was sliced right underneath there. You may see it.

"THE COURT: I can't see anything. I can't see anything. I do not have X-ray vision. This case has been dismissed."

The record before us contains affidavits that the envelope in question was withdrawn from the record and forwarded to the Federal Bureau of Investigation laboratories in Washington, D.C., for a determination of whether the envelope had been slit open underneath the tape as the Commonwealth contended. There is attached to the affidavit a copy of a report from the Federal Bureau of Investigation stating that when the tape was removed the flap of the envelope underneath the red tape was cut completely through from edge to edge with a sharp instrument.

Although physical evidence may sometimes be so compelling as to completely refute oral testimony, in this case there was a considerable controversy as to the condition of the physical evidence, with the trial judge maintaining that the envelope had not been opened and the Commonwealth contending that it had been slit open and resealed with red tape. A simple investigation consisting of the removal of the tape by the judge would have disclosed whether the evidence had, in fact, been opened as contended by the Common-

wealth. The failure of the trial court to conduct such an investigation before the dismissal of this indictment was unreasonable under the circumstances. This was not a case of physical evidence sufficient to overcome oral testimony, but was rather a case of failure to discover the true state of the physical evidence.

The trial judge could as easily have discovered the true state of the physical evidence as did the Federal Bureau of Investigation laboratories. We certify that the dismissal of this indictment under the circumstances of this case was error.

STEPHENS, C.J., and VANCE, GANT, WHITE, WINTERSHEIMER and STEPHENSON, JJ., concur.

LEIBSON, J., not sitting.